UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20923-CR-GOLD

UNITED STATES OF AMERICA,

vs.

DARRELL KNIGHT,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Defendant Darrell Knight's Motion to Suppress Pre-Trial Identification and In-Court Identification (D.E. 3) filed on March 12, 2008. On March 14, 2008, this motion was referred to the undersigned for appropriate proceedings by the Honorable Alan S. Gold pursuant to 28 U.S.C. § 636(b).[1] Accordingly, the undersigned conducted an evidentiary hearing on this motion on April 8, 2008. Based on the evidence and applicable law, the undersigned recommends that Defendant's Motion to Suppress Pre-Trial Identification and In-Court Identification be DENIED.

---

[1] Defendant's Motion to Suppress Statement (D.E. 61) was also referred but the government subsequently advised that it will not seek to introduce post-arrest statements of this defendant to certain officers thereby mooting this motion. See United States' Addendum to Motion to Suppress Statements (D.E. 76). Therefore, the undersigned recommends that defendant's Motion to Suppress Statements (D.E. 61) be DENIED as MOOT.

## FINDINGS OF FACT[2]

On October 15, 2007, a Bank of America in Miramar, Florida, was robbed by two African-American males later identified as suspects Gabriel Myrthil and defendant, Darrell Knight. After the robbery, both suspects fled the bank and escaped in a black Oldsmobile being driven by a third unidentified male. This vehicle was subsequently abandoned and the three suspects were observed entering a white Chevrolet Impala being driven by a black male later identified as "KB" who agreed to drive the three suspects to Liberty City for $1,000.00.[3] Defendant, Darrell Knight, sat behind KB but was observable to him through the interior rear view mirror.

KB drove to Liberty City arriving there in about 20-25 minutes. Enroute, KB saw defendant looking in a backpack for a misplaced cellular telephone. Defendant's face was not covered so that KB could clearly observe him during the drive. KB then dropped off all three passengers in Liberty City where he was handed $1,000.00 in cash by defendant. KB then left the area.

On November 1, 2007, KB was shown six photographs in a photo line-up that included defendant's photograph in the bottom right position. KB had previously described defendant as a black male between 19 and 22 years old, approximately 5' 8" tall and

---

[2] These factual findings are based on the testimony of Detective Gerard Starkey, a Police Officer with the City of Doral Police Department, who created and used the photographic line-up display at issue in this case. The Court also received into evidence the photograph display (Government Exhibit 1). No other evidence was introduced at the suppression hearing.

[3] The government has advised that KB was not known to the three suspects and did not participate in the bank robbery so that he is not a defendant in this case.

2

weighing 170-180 pounds. Detective Starkey prepared the photo line-up using a computer program that generated five other photographs of black males of approximately the same age. Detective Starkey showed KB this photo line-up, asking him to look at the photographs and see if he recognized anyone. KB immediately identified defendant as the person who sat behind him enroute to Liberty City and who gave him $1,000.00. KB circled, signed and dated the photo line-up next to defendant's photograph. KB showed no uncertainty in making this identification.

## ANALYSIS

Defendant moves to suppress his pre-trial and in-court identification by KB on the ground that the photo line-up identification procedure used by Detective Starkey was, or might have been, unduly suggestive in violation of the due process clause of the United States Constitution. Defendant concedes in his motion that the "key factors" that might bear on misidentification were unknown when his motion was filed thereby necessitating an evidentiary hearing on this issue. Nevertheless, defendant argues that his physical description did not match that given by KB after the incident, and that KB had only limited time to observe him in his automobile. Defendant also contends that his photograph in the photo line-up "stood out" from the other photographs in the display.

Reviewing the evidence and applicable law, the undersigned disagrees with defendant finding no improper or unduly suggestive identification procedure used here. The defendant correctly notes that an out-of-court identification is inadmissible if under the totality of the circumstances the identification is unreliable. Neil v. Biggers, 409 U.S. 188

(1972). Where pretrial identification is by photograph, the court uses a two part test to determine whether the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Simmons v. United States, 390 U.S. 377, 384 (1968). First, the court questions whether the identification procedure itself was unduly suggestive. If so, the court then determines whether the identification was still reliable under the totality of the circumstances. See Blanco v. Singletary, 943 F.2d 1477, 1508 (11th Cir. 1991); Dobbs v. Kemp, 790 F.2d 1499, 1506 (11th Cir. 1986). The crucial test of suggestiveness is whether the line-up suggests which individual the witness should identify, thereby creating a likelihood of misidentification. Neil v. Biggers, supra, 409 U.S. at 198. A photographic line-up is unduly suggestive when a suspect's photo significantly stands out from the rest of the photos in the array. O'Brien v. Wainwright, 738 F.2d 1139, 1141 (11th Cir. 1988).

Reviewing the evidence here and applicable law, the undersigned disagrees with defendant's position finding no impermissibly suggestive identification procedure. The government correctly notes the photo line-up used by Detective Starkey consists of six photographs of African-American males of approximately the same age and similar facial gesture. Detective Starkey simply handed the photo line-up to KB and told him to look at the photographs and see if he recognized anyone. KB immediately identified defendant, in the bottom right hand position, as the person he saw two weeks earlier in the back seat of his car and who handed him $1,000.00. Nothing about defendant's photograph, in contrast to the other five, led to this identification. All six males, pictured from the shoulders up, are similar in appearance and depiction in the photo spread. There is simply

nothing suggestive about the photo line-up or the manner in which it was used which suggested defendant's identification by the witness.[4]

Finding no impermissibly suggestive procedure, the undersigned turns only briefly to the issue of whether the identification was reliable under the totality of the circumstances. Generally, five factors are considered by the Court to guide this analysis including (1) the opportunity of the witness to view the suspect at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the suspect, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. Wainwright, 738 F.2d at 1141.

Here, KB had the opportunity to view defendant at close range in the back seat of his vehicle, albeit through a rear view mirror, and when defendant handed him $1,000.00. KB paid particular attention to defendant during the drive to Liberty City observing him looking through a backpack for a lost cell phone. KB immediately recognized defendant's photograph and showed no uncertainty with respect to that identification. KB had seen defendant only two weeks earlier. Considering these factors, the undersigned finds nothing unreliable about KB's pretrial identification of defendant under the totality of the circumstances.

---

[4]Defendant argues that his photograph is distinctive because of the background lighting in his photo, a tattoo on his neck, and his lighter complextion than certain others in the photo array. The undersigned finds that none of these "distinctions" was suggestive or resulted in KB's selection of defendant's photograph as the person he saw two weeks earlier.

## SUMMARY AND RECOMMENDATION

For all of the foregoing reasons, the undersigned finds that the pretrial identification procedure used in this case was not impermissibly suggestive and that the identification by the witness was not unreliable. Accordingly, the undersigned recommends that Defendants Motion to Suppress Pre-Trial Identification and In-Court Identification (D.E. 63) be DENIED.

The parties may serve and file written objections to this Report and Recommendation with the Honorable Alan S. Gold, United States District Judge, within ten (10) days of receipt. See 28 U.S.C. §636(b)(1)(c); *United States v. Warren*, 687 F.2d 347 (11th Cir. 1982), *cert. denied*, 460 U.S. 1087 (1983); and *Hardin v. Wainwright*, 678 F.2d 589 (5th Cir. Unit B 1982); see also *Thomas v. Arn*, 474 U.S. 140 (1985), *reh. denied*, 474 U.S. 1111 (1986).

RESPECTFULLY SUBMITTED in Miami, Florida, this ___15th___ day of April, 2008.

_____
Ted E. Bandstra
Chief United States Magistrate Judge

Copies furnished to:

Honorable Alan S. Gold
All counsel of record